UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:20-cv-193-MOC

| | |
|---|---|
| **CHRISTIAN CORBETT HANSEN**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) ORDER |
| | ) |
| **KILOLO KIJAKAZI**, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 13, 16). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

I.     **Administrative History**

Plaintiff filed an application for disability insurance benefits under Title II of the Act on September 19, 2014, alleging disability as of June 17, 2010 (Tr. 347–48). The agency denied Plaintiff's application initially and upon reconsideration (Tr. 155–87). The ALJ held a hearing and denied Plaintiff's disability claim in March 2018 (Tr. 95–149, 192–207). In March 2019, the Appeals Council granted Plaintiff's request for review and remanded the ALJ's March 2018 decision for the ALJ to apply the correct date last insured and address an unadjudicated period as well as further evaluate Plaintiff's mental RFC to account for limitations describing his abilities in the unskilled work environment (Tr. 215–16). In December 2019, the same ALJ held another hearing where Plaintiff testified with the assistance of counsel (Tr. 35–94). An impartial vocational expert also

-1-

testified (Id.). Plaintiff amended his alleged onset date to January 22, 2013 (Tr. 12, 496). On March 3, 2020, the ALJ issued a written decision finding that Plaintiff was not disabled under the Act (Tr. 12–28).

On December 11, 2020, Plaintiff filed a complaint challenging a denial of Plaintiff's claim for benefits by a Social Security Administrative Law Judge ("ALJ") and a motion to proceed in forma pauperis (Doc. No. 1, 2). On December 21, 2020 the Court granted the motion to proceed in forma pauperis (Doc. No. 3).

In his complaint, Plaintiff asserts that he filed his claim for disability benefits on September 19, 2014 alleging disability beginning June 17, 2010, later amended to January 22, 2013. (Doc. No. 1 at 1). Plaintiff argues that he has now exhausted his administrative remedies. (Id.). He also argues that the final decision in his Social Security case "is not supported by substantial evidence and resulted from material errors of law committed by the ALJ." (Id. at 2). Plaintiff seeks review of this decision under 42 U.S.C. § 405(g) and § 1383(c). (Id.).

**II.     Factual Background**

It appears that the ALJ's findings of fact are supported by substantial evidence. Therefore, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

**III.    Standard of Review**

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather,

-2-

Case 5:20-cv-00193-MOC   Document 18   Filed 12/07/21   Page 2 of 20

inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

-3-

Case 5:20-cv-00193-MOC   Document 18   Filed 12/07/21   Page 3 of 20

### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering her decision, the ALJ applied the five-step sequential evaluation process forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003).

Step one asks "whether the claimant is engaged in substantial gainful activity." (Tr. 13); see 20 C.F.R. § 404.1520(b). A claimant who engages in substantial gainful activity is not disabled. (Id.). In this case, the ALJ found that, while "the claimant worked after the alleged disability," "this alleged disability did not rise to the level of substantial gainful activity." (Id. at 20).

Step two considers whether the claimant "has a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'" (Id. at 18–19); see 20 C.F.R. § 404.1520(c)). Without such impairment or impairments, a claimant is not disabled. (Id.). Here, the ALJ found that Plaintiff had multiple severe impairments: attention deficit hyperactivity disorder; a mood or adjustment disorder; a personality disorder; social anxiety disorder; degenerative disc disease of the lumbar spine; obesity; and obstructive sleep apnea. (Id. at 20–25).

Step three requires the ALJ to determine "whether the claimant's impairment or combination

of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 14); see 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If so, the claimant is disabled. If not, the ALJ must proceed to the fourth step. This is a holistic analysis, including consideration of impairments which are not independently severe. (Id.). In this case, the ALJ found that, while Plaintiff had multiple severe impairments, these impairments did not rise to the level of the impairments enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 25–27). Therefore, the ALJ proceeded to step four.

Before step four, the ALJ is then required to "determine the claimant's residual functional capacity." (Id. at 19); see 20 C.F.R. § 404.1520(e). Here, the ALJ found that Plaintiff

> had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except: he cannot climb ropes, ladders, or scaffolds; must avoid concentrated exposure to hazards; or to fumes, dusts, gasses, or areas of poor ventilation. The work should be simple, routine, and repetitive and the individual could focus two hours at a time. The work should be able to be learned by demonstration in 30 days or less; that requires no more than routine changes and does not require quotas. He cannot perform work that would require any contact with the public, or more than occasional contact with coworkers and supervisors.

(Id. at 27–31).

The ALJ then turns to step four, which asks "whether the claimant has the residual functional capacity to perform the requirements of his past relevant work." (Id.); see 20 C.F.R. § 404.1520(f). If the claimant can continue to work in his or her field, he or she is not disabled. (Id.). In this case, the ALJ found that Plaintiff was unable to perform any of his past relevant work. (Id. at 31).

Step five asks "whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience." (Tr. 14); see 20 C.F.R. § 404.1520(g). "In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in

significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience." (Id.); see 20 C.F.R. §§ 404.1512, 404.1560(c)). Here, the ALJ found that there "were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (Id. at 32). The ALJ credited the testimony of a vocational expert in making this finding. (Id.). According to the expert, Plaintiff could fulfill the requirements of such occupations as hand packager, agricultural produce packager, and floor waxer. (Id.). Because she found that Plaintiff could fulfill the requirements of jobs that existed in significant numbers in the national economy, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Id. at 33).

## V. Discussion

Having reviewed the administrative record and the memoranda submitted by the parties, the Court finds that the ALJ's opinion is supported by substantial evidence. The Court is mindful that its inquiry is not to relitigate the administrative proceeding before the ALJ or to determine if it fully agrees with the ALJ's decision, but rather merely to determine if that decision is supported by "substantial evidence." For the reasons that follow, the Court finds that it is.

### a. Substantial evidence supports that ALJ's finding that Plaintiff is not "disabled" within the meaning of the Social Security Act

As the Government notes, the residual functional capacity ("RFC") determination is committed to the Social Security Administration. 20 C.F.R. §§ 404.1545(a), 404.1546(c). Because the RFC determination involves consideration of a particular claimant's occupational limitations and abilities, it is highly individualized and fact specific. 20 C.F.R. § 404.1545(a)(1); see SSR 85-15, 1985 WL 56857, at *5-6 (S.S.A 1985). This Court's inquiry is limited to determining if "substantial evidence" supports the Administration's conclusions.

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding… Whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (internal refs omitted). The Court agrees with the Government that a modest statement of reasons against which to evaluate the record is all that is required for the Court to affirm the ALJ's decision. The simple question is whether the ALJ's reasoning is clear enough to enable the Court to conduct its limited review of the ALJ's decision. The agency decision being reviewed need not be "elaborate or even sophisticated, but rather . . . simply clear enough to enable judicial review." T-Mobile South, LLC v. City of Roswell, Ga., 135 S. Ct. 808, 815 (2015). While agencies will ideally explain their decisions very clearly, "[e]ven when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" Alaska Dep't of Environmental Conservation v. E.P.A., 540 U.S. 461, 496–97 (2004) (quoting Bowman Transp., Inc., v. Arkansas-Best Freight Sys., 419 U.S. 281, 286 (1974)).

In the Fourth Circuit, the ALJ is not required to address every piece of evidence in order to meet this standard. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is only required to "build an accurate logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). Where an ALJ conducts an evidence-based assessment of the claimant's abilities, the substantial evidence standard compels deference. See Biestek, 139 S. Ct. at 1151–54. In this case, there was substantial evidence of Plaintiff's retained abilities—as demonstrated by his reported activities and stable mental status examination findings—despite the lack of consistent mental health treatment. This clearly exceeds the "more-

-8-

than-a-mere-scintilla threshold" to survive this Court's limited review of the ALJ's mental RFC determination.

The ALJ's decision reflects a fulsome analysis of Plaintiff's complex clinical presentation, contrary to Plaintiff's claim that the ALJ failed to articulate her rationale when determining his mental RFC. Plaintiff argues that the ALJ failed to account for his personality and social anxiety disorders and some difficulties associated with attention deficit hyperactivity disorder. But, in fact, the ALJ included specific social, adaptive, and cognitive limitations in the RFC determination (Tr. 22; Pl. Br. 8–9, 15). Plaintiff also argues that the ALJ failed to consider 2015 TEACCH autism program diagnostic evaluation. But he ultimately concedes the ALJ considered the diagnostic report in the prior and current decision and she gave this report partial weight (Tr. 20, 200, 204, Pl. Br. 4–8). In addition, the ALJ noted that the TEACCH examiners provided Plaintiff several resources and insight but did not offer an opinion on his ability to work or describe specific work-related restrictions (Tr. 20, 200, 204; Doc. No. 13-1 at 4–8).

The Court agrees with the Government that Plaintiff's decision not to contest or challenge any other findings in the ALJ's decision thereby waives additional assertions of error. See Hampton v. Saul, No. 1:19-CV-00186-RJC, 2020 WL 3799769, at *4 (W.D.N.C. July 7, 2020) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citing Duckworth v. Berryhill, No. 5:15-CV-00129, 2017 WL 1528757 at*5-*6) (W.D.N.C. Apr. 26, 2017)). Ultimately, Plaintiff has not established that the ALJ's inquiry was defective in a way that would make it proper for this Court overturn it in the course of its limited review of the ALJ decision. Therefore, this Court will affirm the ALJ's decision.

### b. The ALJ properly considered Plaintiff's impairments in evaluating his RFC

The ALJ is charged with evaluating a claimant's symptoms to determine his or her RFC, and the Fourth Circuit affords an ALJ's symptom evaluation significant deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."); Bishop v. Comm'r of Soc. Sec., 583 F. App'x. 65, 68 (4th Cir. 2014) (the court refused to overturn an ALJ's finding regarding subjective allegations absent "exceptional circumstances"). Nevertheless, "[Plaintiff] has the burden to prove the extent of his limitations"; "it is not the ALJ's burden to prove a lack of limitations." Durham v. Saul, No. 3:20-cv-00295-KDB, 2021 WL 1700353, at *5 (W.D.N.C. Apr. 29, 2021) (citing Hendrickson v. Berryhill, No. 1:16-cv-00367-MOC-DLH, 2018 WL 1431751, at *7 (W.D.N.C. Mar. 22, 2018) (citing Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013)).

The ALJ concluded that Plaintiff's failure to engage in consistent treatment and his reported activities did not support his disability claim. While the ALJ did not find that Plaintiff was disabled, she acknowledged his mental difficulties and determined that he required specific limitations to address his functional deficits interacting with others, adapting, and completing tasks in the work environment. Where an ALJ includes a specific restriction that facially addresses a relevant functional limitation, courts have concluded that—absent some type of evidentiary showing by the claimant—no further explanation by the ALJ is necessary. Everett v. Berryhill, No. 3:19-cv-00246-GCM, 2020 WL 6567141, at *4 (W.D.N.C. Nov. 9, 2020) (collecting cases).

The complicated clinical record reflects that Plaintiff was previously denied disability, and he sought disability during the period at issue for what he described as autism spectrum disorder,

-10-

pervasive attachment disorder disinhibited, attention deficit hyperactivity disorder, and Asperger's syndrome. (Tr. 407; see also Tr. 527, 543, 580-81, 592-93, 599, 713, 719, 738–39). As the ALJ highlighted, Plaintiff's education records document a history of special education for academic and behavioral difficulties, Plaintiff reported interpersonal difficulties at work and in his personal life, and he received some mental health treatment as an adolescent (Tr. 16, 26, 528–29, 593–94). In October 2010, psychological consultative examiner Joshua J. Broman-Fulks, Ph.D. evaluated Plaintiff to facilitate the adjudication of his prior disability claim (Tr. 16–17, 198). Dr. Broman-Fulks concluded Plaintiff's presentation was not consistent with an autism spectrum disorder, although his history established attention deficit hyperactivity disorder (Tr. 16–17, 198, 527, 530–31). As the ALJ found, Plaintiff was also assessed at New River Behavioral Health Center for services that same year in December 2010—where Plaintiff again voiced his own suspicion of an autism spectrum disorder (Tr. 17, 203, 534, 539, 540–43). However, Plaintiff did not follow through with outpatient therapy and medication management, as recommended for attention deficit hyperactivity disorder and borderline personality disorder (Tr. 17–18, 199). The ALJ found that there was no indication that Plaintiff participated in any mental health treatment until nearly two and a half years later (Tr. 18, 199).

As the ALJ discussed, the record reflects several brief stints in outpatient therapy during the period at issue. In April 2013, Plaintiff established care with Daymark Recovery Services and engaged in outpatient therapy with clinicians for two months in May and June of 2013 followed by a significant gap in treatment (Tr. 18–19, 199, 203, 582–90). In September 2013, Rasheed Onafuye, M.D., of Daymark Recovery Services formally evaluated Plaintiff and declined to diagnose a pervasive developmental disorder (Tr. 18–19, 203, 580–81). Thereafter, Plaintiff did

-11-

not engage in mental health treatment until nearly a year later in May 2014, when he established care with Colinda Hendricks, MA, LPA for private individual and couples therapy during his marital separation (Tr. 19, 203, 731–34, 736, 738–47, 749–51, 902–15). Although Plaintiff's couple's therapy abruptly ended, he continued individual therapy with Ms. Hendricks for six months (Tr. 731–34, 736, 738–47, 749–51, 902–15).

During that time, Ms. Hendricks referred Plaintiff to the TEACCH autism program for a diagnostic evaluation (Tr. 735–37). In November 2014, Ms. Hendricks successfully released Plaintiff from therapy, noting that he was doing well, he had a stable employment and home situation, and he demonstrated baseline functioning (Tr. 19, 203, 731–32).

Sheneen Garland Daniels, Ph.D., from the TEACCH autism program confirmed that a diagnosis of an autism spectrum disorder was not appropriate for Plaintiff and recommended that he continue mental health treatment for attention deficit hyperactivity disorder and mood dysregulation (Tr. 200, 204, 603). In March 2015, Dr. Broman-Fulks conducted a second consultative psychological examination, again finding that his presentation was not consistent with autism spectrum disorder and his difficulties were attributable to attention deficit hyperactivity disorder (Tr. 199, 204, 529–97). Nevertheless, Plaintiff did not seek further mental health treatment until he reestablished care with Daymark Recovery Services in February 2017—nearly two and half years after Ms. Hendricks released him from therapy (Tr. 19, 200, 700–12). As the ALJ acknowledged, Plaintiff participated in individual and group therapy at Daymark for four months and his last appointment was in June 2017 (Tr. 19, 200, 713–30). After his date last insured expired in June 2017, Plaintiff reestablished care with Ms. Hendricks for individual therapy four months later in October 2017 (Tr. 19, 865–901).

Plaintiff has only consistently engaged in mental health therapy <u>after</u> the relevant period, and the ALJ found that Plaintiff's refusal to take medication and participate in mental health treatment on a regular basis undermined his disability claim (Tr. 26, 205). Inconsistencies between Plaintiff's allegations and the treatment he sought during the relevant period are highly probative. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). Likewise, symptoms that can be reasonably controlled by medication or treatment are not disabling, and several providers recommended that Plaintiff engage in regular mental health treatment to manage his impairments. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Indeed, the record reflects stable progress with mental health treatment, and as the ALJ highlighted Ms. Hendricks stated that therapy was beneficial in developing Plaintiff's emotional regulation (Tr. 19, 586–90, 713–27, 729, 731–33). Despite Plaintiff's deficits, the longitudinal evidence notes some social strength and age-appropriate behavior; Plaintiff has also reported that he socializes with others on a regular basis (Tr. 18, 202, 583–84, 595, 599, 601–02, 709).

While relying on evidence outside the relevant period and his own subjective reports, Plaintiff argues that the ALJ did not address all of his mental impairments when determining his RFC. Plaintiff particularly highlights his social anxiety and personality disorder diagnoses while also appearing to suggest that the ALJ did not adequately account for related mood, cognitive, and interpersonal difficulties resulting from his combined impairments (Pl. Br. 8–25). Nevertheless, the ALJ accounted for Plaintiff's interpersonal difficulties when restricting his social interaction in the workplace. The ALJ acknowledged Plaintiff's reports and observed struggles with social interaction, but the ALJ also observed pleasant and cooperative interactions during treatment and at his leisure (Tr. 17–18, 21, 24, 26, 201, 205, 583–84, 595, 599, 601–02, 709). Likewise, the ALJ

acknowledged the evidence established that Plaintiff had cognitive and adaptive difficulties, recognizing that his combined mental impairments warranted specific restrictions that were not accounted for in her first decision (Tr. 20–22, 24, 200–02). Although the ALJ found Plaintiff did not establish presumptive disability based on the mental Listings, she reevaluated the evidence to address Plaintiff's mental limitations in descriptive functional terms (Id.).

Plaintiff asserts that the ALJ did not explicitly discuss specific portions of the record; however, as discussed, the law does not require her to do so. Moreover, the ALJ is also not required to explain or address why she found Plaintiff had mild difficulties in an area of mental functioning in the final decision as opposed to the moderate difficulties she rated two years prior (Tr. 21, 201, Pl. Br. 9). The ALJ is not bound by prior administrative findings, and Plaintiff has not presented any legal authority requiring the ALJ to justify any perceived differences between the final decision and earlier decisions (Tr. 38; Pl. Br. 8–25). Moreover, the limitations identified in the "paragraph B" criteria are used to rate the severity of mental impairments and are not an RFC assessment (Tr. 22, 202). See SSR 96-8p, 1996 WL 374184 (July 2, 1996).

The ALJ assessed relevant functions and articulated her rationale when determining Plaintiff's RFC, as directed by the Appeals Council. While Plaintiff takes issue with the ALJ's opinion evaluation, he fails to identify a prejudicial error as discussed below. Finally, although Plaintiff disagrees with the ALJ's analysis, the ALJ observed that he engaged in several work and leisure activities, and the record is reflective of Plaintiff's consistent engagement despite his mental difficulties (Tr. 17, 23–26, 200, 589, 594–95, 873). A claimant's daily activities may support a determination that he or she is not disabled. See 20 C.F.R. § 404.1529(c)(3)(i).

Nevertheless, Plaintiff's participation in such activities was not the only factor the ALJ

considered when deciding his disability claim as discussed in this Argument. The Court finds that the ALJ did not abuse her discretion when noting the absence of substantiating evidence from former employers or observing that Plaintiff's legal issues did not arise from deviant social interaction (Tr. 21, 201). The ALJ is permitted to draw meaningful inferences from the facts. See 20 C.F.R. § 404.1520b; Gatson v. Berryhill, 1:17-CV-182, 2018 WL 3873593, at *6 (W.D.N.C. Aug. 15, 2018) (finding that it is not improper for the ALJ to consider the absence of evidence when formulating the RFC); accord Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (holding that the Commissioner is entitled to rely not only on what the record says, but also on what the record does not say). As the Fourth Circuit has recognized, a claimant's subjective allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence." See Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).

Although the medical records establish that Plaintiff experienced symptoms to some extent, this Court has continually recognized the ALJ's role in evaluating the evidence. Applying longstanding precedent that is consistent with the regulations, this Court has held it is the ALJ's responsibility, not the Court's, to reconcile inconsistencies in the medical evidence. Michaels v. Colvin, NO. 3:15-CV-388-RJC-DSC, 2016 WL 8710975, at *8 (W.D.N.C. Mar. 25, 2016), report and recommendation adopted, 2016 WL 5478014, aff'd sub nom. Michaels v. Berryhill, 697 F. App'x 223 (citing Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976)). Plaintiff's recitation of the evidence fails to identify relevant functional limitations that the ALJ did not discuss or identify material inconsistencies in the evidence that the ALJ failed to resolve. See Funderburk v. Saul, 3:20-CV-00334-FDW, 2021 WL 1721871, at *4 (W.D.N.C. Apr. 30, 2021) (distinguishing Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83, 100 (4th Cir. 2020)); see also

Walker v. Saul, 2021 WL 342570, at *10 (S.D.Va. Jan. 6, 2021). Contrary to Plaintiff's assertions, the ALJ "neither merely gave summary conclusions devoid of analysis, nor simply cited to evidence [she] deemed was consistent." Childress v. Berryhill, No. 3:18-CV-00062-FDW, 2018 WL 5045220, at *7 (W.D.N.C. Oct. 17, 2018) (distinguishing Wood v. Berryhill, 888 F.3d 686, 692, 694 (4th Cir. 2018)). Instead, the ALJ's well-reasoned analysis "build[s] an accurate and logical bridge from the evidence to the conclusion" and reflects a holistic view of the evidentiary record. Cf. Monroe, 826 F.3d at 189 (internal citation and quotation omitted). When reviewing the ALJ's decision under the proper standard, this Court is not "left to guess" how the ALJ considered Plaintiff's impairments because the ALJ's written decision articulates her reasoning adequately.

### c. The ALJ properly evaluated the opinion evidence, including the 2015 TEACCH autism program diagnostic report

Contrary to Plaintiff's argument, when evaluating the opinion evidence, the ALJ gave partial weight to the medical opinions contained in the 2015 diagnostic report. The ALJ also considered third party statements from Plaintiff's mother, state agency psychological consultants' assessments, Dr. Broman-Fulk's consultative opinions, and Ms. Hendrick's other source statement after considering the entire evidentiary record (Tr. 24–26, 203–05). Courts will generally decline to disturb an ALJ's opinion evaluation where the plaintiff fails to show that the ALJ's rationale is inaccurate or otherwise insufficient. See Dunn v. Colvin, 607 Fed. App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

For claims filed before March 27, 2017, the regulation describes medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments(s), including [the claimant's] symptoms, diagnosis and prognosis,

-16-

what [the claimant] can still do despite impairments, and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Here, the ALJ considered the regulatory factors for evaluating opinion evidence and explained the weight accorded to each opinion (Tr. 24–26, 203–05). See 20 C.F.R. § 404.1527(c)(1)–(6). The ALJ is not required to discuss each of these regulatory factors specifically in the decision. Clontz v. Astrue, No. 2:12-CV-00013-FDW, 2013 WL 3899507, at *7 (W.D.N.C. July 29, 2013). Contrary to Plaintiff's assertions, the ALJ discussed both the evidence supporting and detracting from Plaintiff allegations before evaluating the opinion evidence. The ALJ is not required to repeat her analysis with respect to every finding and sub-finding in the decision. See McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002) ("[T]he ALJ need only review medical evidence once in his decision.").

Plaintiff appears to suggest that some opinions may hint at greater limitations or support a finding of disability (Doc. No. 13-1 at 4–7, 20–23). However, the ALJ was not required to rely on any medical opinion when determining the RFC. See 20 C.F.R. §§ 404.1527(a)-(c), 416.927 (a)-(c); see also Felton-Miller v. Astrue, 459 Fed. App'x. 226, 2301–31 (4th Cir. 2011) (unpublished); Jackson v. Comm'r, Soc. Sec., No. CCB-13-2086, 2014 WL 1669105, at 2 (D. Md. Apr. 24, 2014) (an ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment"). The RFC determination is a legal decision rather than a medical one, and the development of a claimant's RFC is solely within the province of the ALJ who considers "all of the relevant medical and other evidence" when making a finding. 20 C.F.R. § 404.1545(a)(3); see also 20 C.F.R. §§ 404.1527(e), 404.1546.

Although Plaintiff suggests that the ALJ failed to consider a diagnostic report from the TEACCH autism program, he concedes that the ALJ referenced this evidence in the current

-17-

decision, discussed the clinical summary of the diagnostic report, and weighed the diagnostic report in her prior decision (Tr. 15, 20, 200, 204; Doc. No. 13-1 at 4–7). Indeed, the ALJ explicitly incorporated her evaluation of the medical evidence by referencing the prior decision and stated that she reconsidered all of Plaintiff's mental health records when issuing new administrative findings as directed by the Appeals Council (Tr. 12, 15–16). As the ALJ stated, the diagnostic report does not assess specific work restrictions. Rather, the clinical summary in the report attributes Plaintiff's difficulties to his attention deficit hyperactivity disorder, and the ALJ agreed with these findings (Tr. 603). The ALJ was not required to discuss the details of every self-report measure or test score from the evaluation, although she did reference some of these measures in her discussion (Tr. 198, 201–02). The ALJ was also not required to construe the report's references to Plaintiff's work and social history or the listed recommendations as a statement of disability. The ALJ explained that Plaintiff's mother was not a disinterested party, and her observations of Plaintiff's current functioning are based on only intermittent visits, as she lives out of state (Tr. 205–06).

When giving the remaining medical opinions from the state agency psychological consultants and consultative examiner Dr. Broman-Fulks partial weight, the ALJ detailed statements pertaining to Plaintiff's functional limitations (Tr. 203–04). Notably, these medical opinions support, rather than conflict with, Plaintiff's assessed RFC (Tr. 22, 596, 167, 184–85). Dr. Broman-Fulks stated while "it is probable that Plaintiff's impulsivity will continue to impact him in work settings … he has demonstrated the ability in the past to sustain employment" noting that he was working at the time (Tr. 204, 596). Aside from indicating moderate impairment in Plaintiff's ability to relate with others and mild to moderate impairment in his ability to sustain

-18-

attention, Dr. Broman-Fulks opined that Plaintiff was otherwise minimally or mildly impaired (Tr. 204, 596). Similarly, the State agency psychological consultants found that Plaintiff could maintain attention and concentration for two-hour periods to carry out simple tasks at a nonproduction pace despite his distractibility; he can accept instructions from supervisors and interact appropriately with the public and coworkers in settings with limited interpersonal demands; and he can function in a stable work assignment (Tr. 24, 167, 184–85, 203–04). Plaintiff does not explain how the ALJ's opinion evaluation and resulting RFC determination materially conflicts with these opinions.

Additionally, the ALJ explained why she found Ms. Hendricks statement that Plaintiff experienced marked mental limitations inconsistent with the evidence as a whole (Tr. 25). As discussed, the ALJ found that Plaintiff's lack of consistent treatment contradicted his disability claim, and Ms. Hendricks only treated Plaintiff for six months during the four-and-a-half year relevant period. Ms. Hendricks only began regularly treating Plaintiff four months after his date last insured expired, and it was appropriate for the ALJ to consider the extent of the treatment relationship during the relevant period. See 20 C.F.R. § 404.1527(c)(2). It was also appropriate for the ALJ to consider the supportability and consistency of Ms. Hendrick's statements in the context of her own treatment notes and other evidence. See id. at § 404.1527(c)(3)-(4). Nevertheless, the ALJ was not required to base her RFC finding on any medical opinion or third-party statement. Wykle v. Saul, No. 1:19-cv-155- MOC, 2020 WL 697445, at *6 (W.D.N.C. Feb. 11, 2020). Thus, Plaintiff fails to demonstrate that the ALJ committed a prejudicial error when evaluating the opinion evidence.

-19-

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. As explained above, the term "substantial evidence" is a term of art that does not imply a high threshold of evidentiary support but, rather, evidence that is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek, 139 S. Ct. at 1154. The Court finds that there was indeed such evidence. Therefore, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner (see Doc. No. 10), denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 13) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 16) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: December 7, 2021

Max O. Cogburn Jr.
United States District Judge